UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MICHAEL WILLIAMS                                    CIVIL ACTION

VERSUS                                              NO: 10-1813

DANOS AND CUROLE MARINE                             SECTION: R(3)
CONTRACTORS, LLC, ET AL.

### ORDER AND REASONS

Before the Court are defendant Danos & Curole Marine Contractors, LLC's motion for summary judgment on plaintiff Michael Williams's status as a seaman[1] and defendant Energy Resource Technology GOM, Inc.'s (ERT) motion for summary judgment that it is not liable for any alleged negligence of Danos & Curole, an independent contractor.[2]  Because the Court finds that plaintiff Michael Williams does not qualify as a Jones Act seaman, the Court grants Danos & Curole's motion.  The Court also

---

   [1]    (R. Doc. 23.)

   [2]    (R. Doc. 12.)

grants ERT's motion, as there are no genuine issues of material fact regarding ERT's alleged liability.

I.   BACKGROUND

Danos & Curole hired Williams to perform sandblasting and painting services on petroleum platforms owned by ERT. The work was performed pursuant to a Master Services Contract (MSC) executed on August 5, 1999, which specifies that Danos & Curole is an independent contractor of ERT.[3] To transport and house Williams, other members of Danos & Curole's blasting/painting crew, and their equipment, ERT provided a supply vessel owned by a third-party contractor.[4] According to the affidavit of Steve Blake, who was Williams's supervisor on the "ERT job," "the vast majority, 80-90% or more, of all Danos & Curole employee work time, including that of Michael Williams, was spent working on platforms."[5] Blake states that, "at no time was Michael Williams ever assigned to a vessel except on a temporary and transient basis that formed less than 30% of his total work time on the ERT

---

[3]   (R. Doc. 12-2 at 1.)

[4]   (R. Doc. 23-2 at 2.)

[5]   (*Id.* at 3.)

job."[6]

Williams testified that he worked on ERT platforms for two separate periods, or "hitches."[7] The first hitch lasted for 27 days, and the blasting/painting crew, of which Williams was a part, consisted of nine workers.[8] The crew slept, ate, and used the bathroom on the vessel,[9] and would transfer to the platform each day to work 12-hour shifts. One crew member, however, was required to stay behind on the vessel as the "pot man" on a loosely rotating basis.[10] When questioned as to how many days out of the 27 that he spent working as the pot man, as opposed to working on the platform, Williams responded, "I know I done it at least four times, maybe more, that I could recall."[11]

On the second hitch, Williams also slept on the vessel, but ate his meals on the platform.[12] As opposed to the first hitch, Williams never stayed behind as a pot man; the entire crew was transported each day to the platform to work, except when

---

[6]   (*Id.*)

[7]   (R. Doc. 23-2 at 7.)

[8]   (*Id.* at 12-13.)

[9]   (*Id.* at 8.)

[10]  (*Id.* at 12.)

[11]  (Deposition of Michael Williams, p. 62.)

[12]  (*Id.* at 19.)

prevented from doing so by inclement weather.[13]  Williams testified that, when the crew stayed on the vessel in bad weather, they were "just sitting out there."[14]

After about a week into the second hitch, Williams allegedly suffered an injury to his left shoulder as he and other members of the crew retrieved a Danos & Curole "pick board" from the platform.  Williams testified that, on the day of the accident, work on the platform had been stopped due to bad weather.[15]  Williams stated that ERT's "lead operator . . . got tired of us just sitting around" and asked the Danos & Curole supervisor, Blake, "Is there anything y'all can do for me?"[16]  Williams further testified that he and the other crew members were then ordered by Blake to retrieve the pick boards.[17]  In order to move one of the boards, Williams worked with two other crew members.[18]  Williams testified that he wrapped strings attached to the board around his wrists to pick up his end of the board, and, when the

---

[13]   (*Id.* at 20.)

[14]   (*Id.* at 19.)

[15]   (R. Doc. 34-2 at 2.)

[16]   (*Id.*)

[17]   (R. Doc. 12-3 at 6.)

[18]   (*Id.* at 6-7.)

board slipped, the strings jerked his arms down injuring his shoulder.[19]

Williams brought this action against Danos & Curole and ERT on June 13, 2011, asserting claims under the Jones Act and the general maritime law.[20]  Williams alleges that he was inadequately trained to transport the pick board and that defendants negligently instructed him to retrieve the pick board in bad weather.  Williams further alleges that Blake should have exercised stop work authority because of the weather conditions at the time of the incident.  Danos & Curole and ERT now move for summary judgment.

**II.   STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any

---

[19]   (*Id.* at 7-8.)

[20]   (R. Doc. 1.)

material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* 2d § 2738 (1983)).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may

satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *Id.* at 325; *see also Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discover and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (citing *Celotex*, 477 U.S. at 332).

## III. DISCUSSION

### A. Jones Act

Williams's Jones Act claim against Danos & Curole turns on whether he qualifies as a "seaman" under that statute. "The Jones Act provides a cause of action in negligence for 'any seaman' injured 'in the course of his employment.'" *Chandris, Inc. v. Latis*, 515 U.S. 347, 354 (1995) (citing 46 U.S.C. § 688). That term is not defined in the Jones Act, but not every

"maritime worker on a ship at sea . . . is automatically a member of the crew of the vessel within the meaning of the statutory terms." *Id.* at 363. To achieve status as a seaman, a party must show both: (1) that the employee's duties contributed to the function of a navigable vessel or the accomplishment of its mission; *and* (2) that the claimant had a connection to a vessel in navigation (or to an identifiable group of vessels) that was substantial in terms of both its duration and its nature. *Id.* at 368. The purpose of this test is to "separate the sea-based maritime employees who are entitled to Jones Act protection from those land based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." *Id.* Whether a person is a seaman is ordinarily a question of fact for the jury. *Ellender v. Kiva Const. & Engin'g, Inc.*, 909 F.2d 803, 805 (5th Cir. 1990). Summary judgment is appropriate, however, when "the facts establish [the lack of seaman status] beyond a question as a matter of law," and no reasonable evidentiary basis exists to support a jury finding that the injured person is a seaman. *Id.* (quoting *Barrett v. Chevron USA, Inc.*, 781 F.2d 1067, 1074 (5th Cir. 1984)).

   Here, Danos & Curole has established, as a matter of law that Williams lacked a substantial connection to the vessel in

terms of duration. *See Chandris*, 515 U.S. at 368. To determine the temporal element, the Supreme Court has adopted a rule of thumb: "A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id.* at 371. Danos & Curole submits the affidavit of Williams's supervisor, Blake, who states that "[a]t no time was Michael Williams ever assigned to a vessel except on a temporary and transient basis that formed far less than 30% of his total work time on the ERT job." Williams offers nothing to refute this evidence. Indeed, Williams's attorney conceded at oral argument that there is no evidence in the record to suggest that Williams spent at least 30 percent of his work time aboard the supply vessel. And although Williams spent time on the vessel eating and sleeping, that time does not figure into the analysis, because it was not spent "in the service of a vessel in navigation." *See, e.g.*, *Hufnagel v. Omega Service Indust., Inc.*, 182 F.3d 340, 347 (5th Cir. 1999) (holding that the time plaintiff "ate, slept, and spent time" on vessel could not be considered in the substantial connection analysis); *Pearson v. Offshore Specialty Fabricators, Inc.*, 1992 WL 300826 (E.D. La. 1992) (finding that plaintiff did not perform a substantial amount of work onboard the vessel even though he ate and slept there). Nor has Williams suggested any circumstance

that would justify an "exceptional departure from the 30 percent test." *Roberts v. Cardinal Services*, 266 F.3d 368, 377 (5th Cir. 2001) (acknowledging that the 30 percent threshold "serves as no more than a guideline established by years of experience" but finding no reason to depart from the "well-established rule"). Consequently, the Court finds that Williams lacked a substantial connection to the vessel and that Danos & Curole is entitled to summary judgment on Williams's status as a seaman. *See Bolden*, 980 F.2d at 1445 (affirming the district court's grant of summary judgment on plaintiff's seaman status because most of plaintiff's painting/sandblasting work was performed on platforms). As such, Williams's claims under the Jones Act and for maintenance and cure must be dismissed. *See Hall v. Diamond M Co.*, 732 F.2d 1246, 1248 (5th Cir. 1984) ("The standard for determining seaman status for the purposes of maintenance and cure is the same as that established for determining status under the Jones Act.").

**B.   ERT's Liability for Alleged Negligence of an Independent Contractor**

The MSC executed between ERT and Danos & Curole specifies that Danos & Curole is an independent contractor of ERT. Under Louisiana Law, which the parties do not dispute governs Williams's claim against ERT, a principal is typically not liable

10

for the negligent acts of its independent contractor committed while performing duties under a contract. *See Coulter v. Texaco, Inc.*, 117 F.3d 909, 911-12 (5th Cir. 1997). That general rule has two exceptions. The first is if the work the contractor is to perform is "ultrahazardous." *Id.* at 912; *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 270 (5th Cir. 1992). Williams does not suggest that painting and sandblasting work falls within this category. *See Calloway v. CNG Producing Co.*, 1999 WL 447451, *3 (E.D. La. 1999) ("Sandblasing and painting and the activities involved with such work, whether in the sunshine or rain, is not an ultrahazardous activity.") (citing *Perkins v. F.I.E. Corp.*, 762 F.2d 1250, 1267-68 (5th Cir. 1985)); *Hebert v. CXY Energy, Inc.*, 72 F. Supp. 2d 681, 686 (W.D. La. 1999) (finding that painting and sandblasting does not fit the definition of ultrahzardous activity). The second exception imposes liability upon a principal for the negligent acts of an independent contractor when the principal reserves the right to supervise or control the work. *See LeJeune*, 950 F.2d at 270. Put differently, "a principal is not liable for the torts of an independent contractor unless the principal exercises operational control over or expressly or impliedly authorizes the independent contractor's actions." *Id.; see also Coulter*, 117 F.3d at 912 (citing *Graham v. Amoco Oil Co.*, 21 F.3d 643, 645 (5th Cir.

1994); *Bartholomew v. CNG Producing Co.*, 832 F.2d 326 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988)). It is not enough that the principal has "a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations or deviations." *LeJeune*, 950 F.2d at 270 (quoting *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469, 1471 (5th Cir. 1989)). "There must be such a retention or right of supervision that the contractor is not entirely free to do the work in his own way." *Id.*

Williams asserts that a jury could find ERT's involvement in the decision to work on the day of the incident rendered ERT liable.[21] Williams relies on his deposition testimony that ERT's "lead operator . . . got tired" of the crew "just sitting around" and asked Blake "Is there anything y'all can do for me?"[22] That alone, however, is insufficient to suggest that ERT retained

---

[21] (R. Doc. 34 at 4-5.)

[22] (R. Doc. 34-2 at 2.) Williams's also relies on Melvin Fairman's testimony that an ERT "company man" pressured Blake to work despite the bad weather. Yet, Fairman acknowledged that he did not witness the conversation between the "company man" and Blake. As such, Fairman's testimony is hearsay for which no exception has been proffered, and is thus not competent summary judgment evidence. *See Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006) (noting that hearsay evidence is inadmissable for the purposes of summary judgment).

operational control.  Williams testified that he received his daily assignments from Danos & Curole and that it was exclusively up to Danos & Curole to decide when and how the work would be performed.[23]  And Williams acknowledged that, as an independent contractor, Danos & Curole "decided what to do, when to do it, and how to do it."[24]  Similarly, Blake testified that, as foreman, he ultimately decided "how to do the work, when to do the work, and where to do the work."[25]  Blake also stated that he would "never allow a customer to pressure [him] into doing something unsafe."[26]  Taking this testimony together, the Court finds, as a matter of law, that ERT did not retain operational control over Danos & Curole's activities, as Danos & Curole could accept or reject ERT's suggestions or recommendations as it saw fit.  As such, Williams cannot show that an exception to the general rule that a principal is not liable for the negligence of its independent contractor applies.  Summary judgment is therefore appropriate, and Williams's claims against ERT are dismissed.

---

[23]     (R. Doc. 12-5 at 2.)

[24]     (*Id.*)

[25]     (R. Doc. 36-1 at 11.)

[26]     (*Id.*)

**IV. CONCLUSION**

For the foregoing reasons, Danos & Curole's and ERT's motions for summary judgment are GRANTED.  Williams's claims against Danos & Curole and ERT are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 23rd day of June, 2011.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE